**SO ORDERED.**

**SIGNED August 27, 2010.**



_____
**ROBERT SUMMERHAYS**
**UNITED STATES BANKRUPTCY JUDGE**

_____

### UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF LOUISIANA

IN RE:

JOHN MICHAEL ROMERO                    CASE NO. 09-50993

----------------------------------------------------------------

GREG ANTHONY GUIDRY,
GREG GUIDRY ENTERPRISES, INC. and
MANUFACTURING COORDINATORS
SALES & SERVICE, L.L.C.

VERSUS                                 ADVERSARY NO. 09-5037

JOHN MICHAEL ROMERO

----------------------------------------------------------------
### MEMORANDUM RULING
----------------------------------------------------------------

The present matter is an adversary proceeding filed by **GREG
ANTHONY GUIDRY** ("Guidry"), **GREG GUIDRY ENTERPRISES, INC.** ("Guidry
Enterprises"), and **MANUFACTURING COORDINATORS SALES & SERVICE,
L.L.C.** ("MCSS" and, together with Guidry and Guidry Enterprises,
"Plaintiffs") against **JOHN MICHAEL ROMERO** ("Debtor" or "Romero")

seeking a declaration that debts allegedly owed by Debtor to Plaintiffs are non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4). The court took the case under advisement following a trial on the merits. The court rules as follows.

## JURISDICTION

The court has jurisdiction over the matters asserted in this adversary proceeding pursuant to 28 U.S.C. §§1334 and 157(a). This matter is a core proceeding in which this court may enter a final order pursuant to 28 U.S.C. §157(b)(2)(I) and (J). The following Memorandum Ruling shall constitute the court's findings of fact and conclusions of law.

## BACKGROUND

Guidry Enterprises manufactures parts for the oil and gas industry. Guidry was the owner of Guidry Enterprises and Romero worked for Guidry as a salesperson. In or around the beginning of 2003, Guidry and Romero organized MCSS to provide support to the oil and gas industry in the areas of "equipment procurement, brokering between suppliers and end users, sales and servicing...." Complaint at 2. To that end, Guidry and Romero filed articles of incorporation for MCSS with the Louisiana Secretary of State and hired an employee, Catherine Carriger, to open an MCSS office in Mexico. The record includes an operating agreement for MCSS, but it appears that the agreement was never executed by Romero. <u>See</u> Guidry Exh. 4. This agreement provided that Guidry and Romero were

-2-

the sole members of MCSS, and that each owned 50% of the Company. <u>Id</u>. Guidry and Romero were also each designated as "managers" of the company with "full authority to bind [MCSS]...." <u>Id</u>. at 7. Although not formally documented, Guidry and Romero further agreed that Guidry and Guidry Enterprises would provide the "start up" funding for MCSS, while Romero would perform the organizational, sales, and other day-to-day duties necessary to make MCSS a success. Unfortunately, MCSS did not succeed, and the business was shut down in 2005. The parties dispute the reason for MCSS's failure. Guidry contends that Romero failed to perform the duties that he promised to perform when MCSS was first organized. Specifically, Guidry contends that Romero failed to provide the support to Carriger necessary to make the Mexican operations a success. Romero points to the fact that the oilfield services industry suffered a slump in 2005 and many companies - - including Guidry Enterprises - - suffered losses during this period.

Romero filed for relief under Chapter 13 of the Bankruptcy Code on July 23, 2009. The case was subsequently converted to a case under Chapter 7 of the Code. Guidry subsequently filed the instant adversary proceeding seeking to exclude the debts allegedly owed by Romero to Plaintiffs from the discharge.

## DISCUSSION

The creditor has the burden of proof in an action to determine the dischargeability of a debt. <u>Grogan v. Garner</u>, 498 U.S. 279,

-3-

286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." <u>Hudson v. Raggio & Raggio, Inc. (In re Hudson)</u>, 107 F.3d 355, 356 (5th Cir. 1997). Accordingly, a creditor must establish each and every element of a statutory exception to discharge under 11 U.S.C. § 523 <u>et seq</u>. by a preponderance of the evidence.

Plaintiffs allege that the following actions by Romero support a finding that his debts to Plaintiffs are non-dischargeable:

- Romero obtained a $750 bonus from Guidry Enterprises without authorization;

- Romero fraudulently induced Guidry and Guidry Enterprises to invest $39,157 in MCSS based on assurances that Romero would contribute his services to MCSS;

- Romero allegedly misused company credit cards, and charged $38,599 for unauthorized, personal purchases.

Plaintiffs contend that Romero's actions support a finding of non-dischargeability under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4). Section 523(a)(2)(A) provides that "money, property, services, or an extension, renewal, or refinancing of credit" that is obtained through "false pretenses, a false representation, or actual fraud" is subject to exception from a debtor's discharge. 11 U.S.C. § 523(a)(2)(A). In order for a debt to fall within section

-4-

523(a)(2)(A), the debtor's fraud or false representation must involve the debtor's "moral turpitude or intentional wrong." Vizzini v. Vizzini ( In re Vizzini), 348 B.R. 339, 343 (Bankr. E.D. La. 2005), aff'd, 234 Fed. Appx. 234 (5th Cir. 2007) (quoting In re Chavez, 140 B.R. 413, 419 (Bankr. W.D. Tex. 1992)).    In order to deny discharge of a debt under section 523(a)(2)(A), the plaintiff must prove that: (1) debtors made representations; (2) debtors knew the representations were false at the time they were made; (3) debtors made the representations with the intent to deceive plaintiffs; (4) plaintiff relied on these misrepresentations; (5) plaintiff's injury was sustained as a proximate result of the representations having been made by debtors.  In re Bercier, 934 F.2d 689, 692 (5th Cir. 1991); RecoverEdge L.P. v. Pentecost, 44 F.3d 1284, 1293 (5th Cir. 1995).  The Bankruptcy Code further excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." 11 U.S.C. § 523(a)(4).    Embezzlement is defined as the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." In re Miller, 156 F.3d at 602 (emphasis added).  Larceny is defined as the "fraudulent and wrongful taking and carrying away of the property of another with intent to convert it to the taker's use and with intent to permanently deprive the owner of such property." In re Hayden, 248 B.R. 519, 526 (N.D. Tex. 2000) (emphasis added).

-5-

## 1.   Romero's $750 Bonus.

Does Romero's $750 bonus payment satisfy the requirements for a non-dischargeability claim under sections 523(a)(2)(A) and 523(a)(4)? Guidry contends that Romero instructed Phyllis Regan, the bookkeeper for Guidry Enterprises and MCSS, to cut a check for $750 to Romero as a bonus. According to Guidry, Romero told Ms. Regan that Guidry had approved the bonus. Guidry contends that he did not authorize the bonus payment and that Romero's statement to Regan that the bonus had been authorized was false. The record does not include any documents addressing the parties' agreement as to bonuses. The unsigned operating agreement for MCSS does not address bonuses. However, Ms. Regan testified that she had cut bonus checks for Romero and other employees during the time she worked as a bookkeeper. She further testified that she would confirm bonus payments with Guidry before she would cut a check, and that she would not have made a payment to Romero or any other employees without confirming with Guidry that the bonus was authorized. Considering the record as a whole and Ms. Regan's testimony that bonuses were confirmed with Guidry, Plaintiffs have not met their burden that Romero obtained the $750 bonus payment through fraud or false pretenses within the meaning of section 523(a)(2)(A). Nor does the record support a finding of embezzlement or larceny under section 523(a)(4).

-6-

## 2. Romero's Use of Company Credit Cards.

The record similarly does not support a non-dischargeability claim under sections 523(a)(2)(A) or 523(a)(4) based on Romero's use of company credit cards. The record reflects that Romero was issued company credit cards for purposes of charging business-related expenses incurred on behalf of MCSS. Guidry contends that Romero used company credit cards for approximately $38,599 of personal expenses despite warnings from Guidry that company credit cards could not be used for personal expenses. According to Guidry, Romero promised to repay the personal charges. Considering the record as a whole, Guidry has not met his burden of proving that Romero's actions amount to fraud. Again, there are no written agreements or documents that address the use of company credit cards or that otherwise reflect a policy prohibiting personal charges. Indeed, the record reflects that Romero and other employees made personal charges to company credit cards between 2003 and 2005, that Guidry knew about the charges, and that he allowed the practice to continue – albeit with the understanding that the charges would be repaid. Ms. Regan testified that Guidry would give her the credit card bills when he received them. Regan would then review the bills and enter the charges into the company's accounting system. Regan testified that she would flag personal charges on Romero's bill and bring these

-7-

charges to Guidry's attention, but that Guidry instructed her to pay the bills. Regan further testified that Romero and other employees who made personal charges agreed to reimburse the company for those charges. There is no evidence that Guidry prohibited this practice or took any actions to suspend Romero's use of company credit cards. In short, the record does not support a finding of reliance or fraudulent intent, both of which are essential elements of a fraud-based non-dischargeability claim under 523(a)(2)(A).

Moreover, the evidence regarding Romero's failure to reimburse Plaintiffs, while arguably supporting the existence of a debt, does not satisfy the elements required to exclude that debt from the discharge. A debt may be non-dischargeable under 11 U.S.C. § 523(a)(2)(A) when a debtor makes promises of future performance that the debtor never intended to honor. <u>Matter of Bercier</u>, 934 F.2d 689, 692 (5th Cir. 1991), citing <u>In re Roeder</u>, 61 B.R. 179, 181 (Bankr. W.D. Ky. 1986). Based on the record in the present case, Guidry did not prove that Romero misrepresented his intention to repay the personal charges. Romero undeniably breached his agreement to repay Guidry. However, the record does not support a finding that Romero misrepresented his intention to pay when the promise was made. In fact, Ms. Regan testified that Romero repaid some of the personal expenditures charged to company credit cards

-8-

from 2003 to 2005, which tends to eliminate the inference that Guidry never intended to honor his agreement with Guidry.

Similarly, Guidry has not met his burden of proving that this debt is non-dischargeable under section 523(a)(4).[1] Both embezzlement and larceny require a showing of fraud. In re Miller, 156 F.3d at 602; In re Hayden, 248 B.R. at 526. As explained above, the record does not support a finding of fraud with respect to Romero's credit card charges. In sum, any debts arising from Romero's charges on company credit card are not excepted from discharge under sections 523(a)(2)(A) or 523(a)(4).

---

[1] Plaintiffs do not argue that the fiduciary fraud and defalcation prongs of section 523(a)(4) apply in this case. In any event, the record does not support a finding that the fiduciary relationship required for a section 523(a)(4) claim existed between Romero and Plaintiffs. The type of relationship required to trigger liability for fiduciary fraud or defalcation under section 523(a)(4) is determined by federal law. A fiduciary under section 523(a)(4) is narrowly defined, applying only to **technical or express trusts**. In re Bennett, 989 F.2d 779, 784 (5th Cir. 1993)( citing In re Angelle, 610 F.2d 1335 (5th Cir.1980)); see also In re Tran, 151 F.3d 339, 342 (5th Cir. 1998); In re Schwager, 121 F.3d 177, 186 (5th Cir. 1997). The requisite trust relationship must exist prior to the act creating the debt and without reference to that act. In re Bennett, 989 F.2d at 784; see also In re Tran, 151 F.3d at 342 (trustee's obligations must have been imposed prior to, rather than by virtue of, any claimed misappropriation or wrong). "In other words, the trust giving rise to the fiduciary relationship must be imposed prior to any wrongdoing. The debtor must have been a trustee before the wrong and without any reference to it." In re Bennett, 989 F.2d at 784 (citation omitted). Therefore, constructive trusts or trusts ex malificio are insufficient to create a fiduciary relationship within the meaning of section 523(a)(4). See In re Tran, 151 F.3d at 342. Here, the record does not support the existence of such a relationship.

-9-

### 3.  Plaintiffs' Investment in MCSS.

Guidry also seeks to exclude $39,157.03 from discharge under Sections 523(a)(2)(A) and 523 (a)(4).  According to Guidry, this represents half of the amount that Plaintiffs invested in MCSS and lost when the business failed.  Guidry contends that he is only seeking half of the losses based on his agreement with Romero that they would split any losses.  According to Guidry, Plaintiffs invested in MCSS based on Romero's promise that he would manage the start-up and sales activities for the new business.  Guidry expected Romero to assist Carriger in starting up the company's operations in Mexico.  Guidry testified that Romero failed to follow through on his promise to assist Carriger.  For example, Guidry testified that Romero assured him that he was traveling to Mexico to assist Carriger.  In reality, Guidry made few trips to Mexico and, according to Guidry and Carriger, did very little to promote the company's operations in Mexico.  Guidry contends that Plaintiffs would not have made the investment in MCSS if he had known that Romero was not fulfilling the duties he agreed to perform.

Considering the record as a whole, Romero may have failed to perform the duties that he agreed to perform and may have failed to support Carriger with respect to the company's operations in Mexico.  Romero's conduct, however, does not support a finding of fraud sufficient to invoke the exceptions to discharge under

-10-

Plaintiffs invested in MCSS based on Romero's assurances of future performance, Romero's failure to perform may support a breach of contract claim, but not a claim for fraud. See, e.g., Matter of Bercier, 934 F.2d at 692. The record also does not support causation – in other words, that Romero's conduct was the proximate cause of Plaintiffs' loss. Guidry testified that there was a general decline in the oilfield services industry during the period leading up to MCSS's failure. He further testified that Guidry Enterprises suffered losses during this period. Based on this evidence, Guidry cannot establish the Plaintiffs' losses were due to Romero's conduct as opposed to the general decline in the market that occurred during the same time period. Simply put, not all business failures are attributable to fraud. Plaintiffs have not met their burden of proof as to the non-dischargeability claims based on Plaintiffs' investment in MCSS.

### CONCLUSION

For the reasons set forth above, Plaintiffs shall take nothing on their claims. Debtor shall submit a judgment in conformity with this memorandum ruling within thirty (30) days.

### ###

09-05037 - #23  File 08/27/10  Enter 08/27/10 16:46:53  Main Document  Pg 11 of 11